# STATE OF VERMONT

## ENVIRONMENTAL COURT

In re: Appeals of Patrick        }
Simoneau and William Penrod      }
                                 }   Docket Nos. 210-9-00 Vtec
                                 }   and 146-9-01 Vtec
                                 }
                                 }

## <u>Decision and Order</u>

Appellants Patrick Simoneau and William Penrod appealed in Docket No. 210-9-00 Vtec from a decision of the Planning Commission and in Docket No. 146-9-01 Vtec from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Colchester approving Appellee-Applicant Winooski Valley Park District's (the District) applications for site plan approval and for a zoning permit for a 1400-foot-long footpath completing a loop around the south end of Colchester Pond. Appellants are represented by Liam L. Murphy, Esq. and Lisa B. Shelkrot, Esq.; Appellee-Applicant is represented by Scot L. Kline, Esq.; the Town is represented by Richard C. Whittlesey, Esq.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant Patrick Simoneau owns property and a residence near the south shore of Colchester Pond and overlooking the Pond, where he has lived since the late 1980s. Appellant William Penrod owns property and a residence adjoining and to the west of Appellant Patrick Simoneau's property. In the early 1990s, Appellee-Applicant Winooski Valley Park District began purchasing property surrounding Colchester Pond. It has acquired property including the entire shoreline of Colchester Pond, including a twenty-foot-wide strip of land along the southern shoreline of the pond, between Appellants' properties and the pond, that is at issue in the present appeals.

Access to Colchester Pond and the District's property around Colchester Pond is by a gravel road, Colchester Pond Road, leading over a small bridge to an 18-car-plus-one-bus parking lot at the southwesterly side of the pond. Parking is not allowed outside the gate to the parking lot along the entrance road, and the District enforces a towing policy for such vehicles. The District has posted signs on the entrance road advising visitors of this policy, but as of the date of the site visit in the fall of 2001, the signs were ineffective for that purpose as they were posted in a temporary form subject to being blown or folded over by the wind. The parking lot is gravel and is open to the public from dawn until dusk daily, year round. The caretakers open and close the

gates controlling access to the parking lot. Colchester Pond Park is used in the warmer weather for boating, swimming, picnicking and hiking, and in the winter for ice fishing. Hiking in the winter is predominantly on the ice of the pond rather than on the trails.

This area of the District's property contains the caretakers' residence, an informational bulletin board at which park policies and maps of the park land and paths are posted, a picnic table near the pond, and a path down to the pond edge at which canoes and small boats may be walked down to the pond and launched into the water. A trail around much of Colchester Pond leads from the parking area towards the north and east. Another picnic table is located along this trail about a quarter mile to the north of the parking lot, under a large tree and having a view looking to the south over the pond. Farther along the trail along the north shore of Colchester Pond is a peninsula jutting out into the pond that provides a good area for swimming and picnicking. The trail proceeds around the northeast, easterly and southeasterly sides of Colchester Pond, for a distance of more than two miles from the parking lot. Additional hiking trails extend from this trail up into the hills to the north and east of the pond. Park policy is that pets are required to be leashed on trails, and that no hunting or trapping is allowed at Colchester Pond. The degree to which the District has in the past enforced or monitored its policies is not before the Court in the present case.

At the present time, the trail is not complete around the southwesterly segment of Colchester Pond. Signs are posted at the parking lot bulletin board and along the trail partway around the pond, warning users of the trail that it is not complete. Without the trail segment at issue in these appeals, most of the Park's users either access the pond by boat from the parking lot, or walk some distance on the trails to or around the north end of the pond. Some users of the trail walk all the way around the north and east sides of the pond to the south side of the pond where the present trail terminates in open fields near Mr. Simoneau's house.

The land uses near the southerly end of Colchester Pond include three farm fields that are actively cultivated for hay and are hayed twice a year. The farmer brings a tractor and its associated mowing equipment and wagons as necessary to cut and process the hay and bring it out. The equipment is brought in and out via a farm road which passes uphill from the pond along Mr. Simoneau's and Mr. Penrod's property. Access to the farm road is controlled by a padlocked gate near Mr. Simoneau's house. Depending on weather conditions, each cutting takes approximately a week. Three houses are located near the south end of Colchester Pond, with two barns. One of the barns is used for horses, which are pastured in a field in the area.

Outside the gates of the parking lot and south along the Park's entrance road is an entrance to or exit from the northwestern end of the proposed trail segment. Access from the entrance road to this segment leads first to a series of small gravel peninsulas constructed to support double pole towers holding electricity transmission lines. Access to these gravel peninsulas has traditionally been used for fishing, even prior to the District's acquisition of the land surrounding the rest of Colchester Pond.

In the applications that are the subject of the present appeals, the District proposes to complete the trail around the southwesterly segment of Colchester Pond, for a distance of approximately1400 feet. The proposed trail would be two feet wide and would follow a path

generally as marked in orange on the District' s Exhibit 2. The map shown in Exhibit 2 meets the submission requirements of § 1803.1(a) of the Zoning Regulations, as there are no improvements' proposed in association with this project. The proposed trail segment is located entirely on land owned by the District between Colchester Pond and Appellants' property, and does not involve the construction of any boardwalks or other structures or the placement of any fill. The district proposes to mow or cut vegetation on the trail, but to leave low vegetation growing in the trail to assist in preventing erosion of the trail.

Other than cutting the vegetation on the pathway of the trail itself, and removing branches extending across the trail, no removal of vegetation will be associated with the creation or maintenance of the proposed trail. A wire fence approximately four feet high runs along the property line between Appellants' property and the District' s property. This fence is and would continue to be effective to prevent users of the proposed trail from trespassing onto Appellants' property. The route of the new trail segment, described from north to south, runs along the shore adjacent to the electric transmission tower peninsulas. Southerly of the first two electric transmission tower peninsulas, the proposed trail segment turns to the west and sharply uphill to avoid a pool or deeper marsh area which extends inland from the shoreline. The trail follows either of two alternate upland routes, one near the boundary fence and one partway down the hill from the boundary fence. It then proceeds downhill again, and generally follows the fenceline to the farm road gate near Mr. Simoneau' s house. The vegetation surrounding the footpath is from two to five or six feet tall, as the path traverses the lower area at about the elevation of the shoreline. Within the vegetated areas the trail segment will be marked by the distinction between the mowed surface of the trail segment and the taller, unmowed surrounding vegetation. Within the woods uphill from the pool area, the trail will need to be marked by paint, or other markers applied to the trees or along the rocks or markers inserted into the soil at the edges of the trail.

Mr. Penrod' s house is well-screened by existing vegetation from users of the new trail segment. Mr. Simoneau' s house is well-screened by existing vegetation from users of the new trail segment until the southernmost end of the new trail segment, near the farm road gate, where the area opens up to the existing farm fields traversed by the end of the existing trail. The proposed trail segment has adequate existing vegetation (landscaping) and screening to meet the site plan approval requirements without additional plantings. Setbacks are technically inapplicable as the proposed trail segment does not involve any buildings, structures or other improvements. The proposed trail segment will not adversely affect the considerable scenic and natural beauty or the aesthetics of the area.

Colchester Pond Park' s caretakers monitor the number of cars in the parking lot, but they are not always present at the park. The District' s Executive Director has visited the Park approximately weekly on weekdays for approximately four years, and on weekends less frequently. As of 1999, when the segment of trail was open for a time, the caretakers observed[1] approximately 311 cars using the parking lot in the heaviest month of use, with an average of 15.2 cars using the lot on the heaviest weekend day. From these observations, the District estimates that no more than approximately 60 people visit Colchester Pond Park on even the busiest day. Only some portion of those visiting the Park are expected to reach and use the new trail segment at issue in the present appeals, as there are attractions on land to the north and east of Colchester Pond and many visitors come for the purpose of boating and fishing from boats out

on the pond, and not for using the land adjacent to the pond. When this trail segment was open in 1999, Mr. Simoneau observed in the low-usage month of November approximately 60 users, or approximately two users per day, at the proposed trail segment.

The southerly end of Colchester Pond consists of open water, merging into deep marsh, merging into shallow marsh as it approaches the shoreline. The marsh vegetation absorbs the energy of water moving onto the shoreline from the open water of the pond, and the roots of the vegetation stabilize the shoreline and help prevent erosion. The proposed route of the trail would leave the marsh vegetation and the immediate shoreline vegetation undisturbed. The marsh areas are classified as a Class III wetland under the Vermont Wetland Rules. An unimproved footpath such as the one proposed in this application is an allowed use even if the wetlands were regulated as a Class II wetland. The proposed trail does not involve any filling, grading, dredging or alteration of the flow of water in or out of the wetland. Vegetation on the proposed trail is proposed to be cut low to the ground but leaving the roots and low growth intact to prevent erosion. No herbicides, insecticides or other chemicals will be used in connection with the proposed trail or its maintenance. The volume of hikers would have to exceed 50 to 60 people in a day in order to cause unacceptable wear on the vegetation and risk erosion of the trail surface. With the level of use predicted by the District, the proposed trail will not cause undue water pollution, will not cause unreasonable soil erosion or compaction, and will not cause any undue adverse effect on the wetlands (that is, on any rare or irreplaceable natural areas).

The species of wildlife observed at the south end of Colchester Pond include birds, small mammals, amphibians and reptiles. The bird species include the swamp sparrow, the American bittern, the great blue heron, the mallard duck, the Canada goose, the ringtail gull, the cormorant, the belted kingfisher, the tree swallow, the barn swallow, and the osprey. While some of the species, in particular the bittern, are secretive in habit, they habituate easily to the level of human presence predicted for the use of this segment of trail, even during nesting season. None of the observed species, including those shown on Mr. Simoneau's photographs (Exhibits K through Y), are rare, endangered or threatened species. Based on expert observations of wildlife behavior near trails through wetlands in the Missisquoi National Wildlife Refuge, the Dead Creek Wildlife Management Area, the Mud Creek Management Area, and the Green Mountain Audubon Society land in Huntington, the proposed trail segment is not expected to reduce the number of wildlife species or the populations of those species in the area of the proposed trail segment. With the level of use predicted by the District, the proposed trail segment will not have an undue adverse effect on the wildlife in the area (that is, on any rare or irreplaceable natural areas).

With the level of use predicted by the District, the proposed trail segment also will not have an undue adverse effect on the character of the area. The south end of Colchester Pond receives boating use and the use of the existing trail to its present terminus. Its adjoining land uses include farm fields and their associated haying-related uses, a few residences and their associated barns and horses. People fish from the gravel peninsulas supporting the electric transmission towers, and access those peninsulas from the Park entrance road. The two-foot-wide proposed trail segment is consistent with the character of the area through which it runs.

However, the protection of and lack of adverse effect upon the area affected by the proposed trail segment depends entirely on whether the District is correct in its predictions regarding the

number of people expected to use the new segment of trail. To avoid an adverse effect on the character of the area, not only must the number of users of the trail not exceed a maximum of approximately 60 on any day, but those users must be distributed through the day so that the hourly rate will not cause undue noise and disturbance to the neighboring residents or the neighboring wildlife. The Court does not find it convincing that the majority of users will necessarily access the new trail segment by going all the way around Colchester Pond to the north and east and south. Some number of new users will access the new trail segment from the entrance road.

Accordingly, approval of the proposed trail segment must contain the following conditions to assure that no undue adverse effect will result from the completion of the loop trail and the consequent access from the entrance road end of the proposed trail segment. Based on the foregoing, it is hereby ORDERED and ADJUDGED that the proposed trail segment is approved with the following conditions:

1. The District shall not allow any more usage of the proposed trail segment than 60 people per day. Except for organized school, homeschool, camp, birdwatching, nature study or other organized groups, and except for persons fishing from the northerly gravel peninsulas who have accessed the trail segment from the north, the District shall not allow more than 12 people to use the trail segment in any given hour. The District shall institute a reservation system for larger groups to distribute their use of the proposed trail segment.

2. In the first full season of operation, from May 1 through October 31[2], the District shall post two employees or agents, paid or volunteer, as follows at least on Fridays, Saturdays and Sundays,[3] to observe and record the hourly usage of the trail segment, to monitor and enforce the usage requirements of this order, and specifically to record any usage beyond the levels required by this order that they find themselves unable to enforce. One shall be located near the southerly farm road entrance to the trail segment; the other shall be located at the northerly entrance to the trail segment or in the area between that point and the northernmost of the gravel peninsulas. The two district employees or agents shall be equipped with a two-way radio set or similar communications equipment, to enable them to communicate to each other regarding the numbers or descriptions of persons seeking to enter the trail from each end.

3. On or before the 15th of each successive month, the District shall supply the results of these observations for the preceding month in writing to the Town and to Appellants.
4. Before opening the trail segment for operations, the District shall post a description of the trail segment, including a warning of its steepness, the prohibition on the use of the private farm road as an alternative exit, and information about the trail segment's use limitations and the number to call for group reservations, at the following locations: at the bulletin board at the parking lot; at a point along the north shore of the Pond at which the trail leaves the picnic and swimming areas and proceeds around the east shore; at the halfway point around the east shore (at this location together with information that this is the halfway point); at the farm gate southerly end of the trail segment (at this location together with a statement that unauthorized use of the private farm road is prohibited); and at the northerly entrance to the trail segment from the entrance road.

5. Before opening the trail segment for operations, the District shall file with the Town for its permit files for this project[4], with a copy to the Court for the Court' s file, an enlarged site plan of only this area of the Park, specifically showing the two-foot-wide trail specifically located within the 20-foot-wide strip of District-owned land, and specifically showing the two alternate routes of the trail above the pool.

6. At any time after the fourth full month of operation of the trail segment, any party may file an application with the appropriate town body for amendment of the permit conditions, based upon the information collected under these conditions and any other observations of the functioning of the trail segment. Any such application, if appealed, would be a new appeal and not a continuation of the present appeal. This provision is in addition to and without prejudice to the rights of any parties to enforce this order, or any permit issued based on this order, under the provisions of 24 V.S.A. § § 4444, 4445, or 4470(c), or the general contempt authority of the courts. It is also without prejudice to any request to amend that might result if the wetland in the area were reclassified as a Class II wetland under the State wetlands regulations.

    Done at Barre, Vermont, this 21st day of May, 2002.


_____
Merideth Wright
Environmental Judge



**Footnotes**

[1] These numbers tend to underestimate the actual number of cars and assumed numbers of users of the park. The observations were not done continuously over the time period, of actual cars moving into and out of the parking lot, but rather were 'snapshots' of the numbers of cars there at the times of observation. Users of the park who are present for only a portion of the day may not be separately counted. Also, the assumed number of persons per car was set at two, which can be expected to yield a low estimate as it does not account for family or group use. Further, the parking lot accommodates a bus but no bus use was presented in the observations.

[2] That is, from whatever date the trail segment begins operation (after conclusion of any further appeals) through October 31 in that year, and from May 1 to the anniversary of the initial operation date in the following year, so that the trail use is monitored and data is collected for one full warm-weather operating season

[3] The District is, of course, free to monitor the use of the Park or this trail segment at other times of the year or on other days of the week, and is free to provide persons with naturalist training who can also inform visitors regarding the bird or animal species or wetland environment.

[4] Please note that this is NOT a requirement that the site plan be filed with the Planning Commission for any further approval. Rather, it is a requirement that the specific location of the

trail segment as testified to at trial and as demonstrated to the Court during the site visit be memorialized on paper for the files. See the confusion caused by a similar but inadequately-explained requirement in In re Appeal of Miserendino, Docket No. 2000-189, slip op. at 2-3 (Vt. Supreme Ct., August 23, 2001) (decision of three-justice panel).